# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOHAN CROSS,<br><br>            Plaintiff,<br><br>    v.<br><br>M. REYNOSO, et al.,<br><br>            Defendants. | Case No. CV 13-1080-GHK (JEM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

On February 21, 2013, Yohan Cross ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 28 U.S.C. § 1983 ("Complaint").

## SCREENING STANDARDS

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't,

901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Before dismissing a pro se civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. Id. Only if it is absolutely clear that the deficiencies cannot be cured by

1  amendment should the complaint be dismissed without leave to amend. Id. at 623; see also
2  Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

3  After careful review and consideration of the Complaint under the relevant standards
4  and for the reasons discussed below, the Court finds that the Complaint should be
5  **DISMISSED WITH LEAVE TO AMEND.**

## PLAINTIFF'S ALLEGATIONS

Plaintiff names as defendants: M. Reynoso, institutional gang investigator at California Men's Colony ("CMC"); J.L. Cortez, institutional gang investigator at CMC; M.L. Brodie, an officer with the Office of Correctional Safety ("OCS") of the California Department of Corrections and Rehabilitation ("CDCR") in Sacramento; and J. Jefferson, an officer with the OCS of the CDCR. (Complaint, Attach. at 2-3.)

On September 8, 2010, Reynoso searched Plaintiff's property and found a publication by George Jackson, the founder of the Black Guerilla Family ("BGF") prison gang, as well as a photograph of Jackson. (See Complaint, Attach. at 5, Exh. 1-2.) On September 23, 2010, Reynoso obtained a statement from a confidential informant identifying Plaintiff as a fellow member of the BGF. (See Complaint, Attach. at 7, Exh. 3.) On October 14, 2010, Reynoso and Cortez submitted a gang validation package containing evidence regarding Plaintiff's affiliation with the BGF. (See Complaint, Exh. 3.) The gang validation package informed Plaintiff that he had been identified as a BGF member, based on four separate source items, including Plaintiff's possession of the printed materials regarding George Jackson and the confidential informant's statement that Plaintiff was a BGF member. (Complaint, Exh. 3.) Reynoso and Cortez concluded that there was sufficient evidence to validate Plaintiff as a member of BGF. (Complaint, Exh. 5.) On December 2, 2010, defendants Brodie and Jefferson validated Plaintiff as a member of the BGF. (Complaint, Attach. at 8, Exh. 6.) As a result, Plaintiff has been confined to the Secured Housing Unit ("SHU").

Plaintiff alleges that defendants relied upon insufficient evidence to validate him as a BGF member. (See Complaint, Attach. at 3-4.) Plaintiff acknowledges that he was found to

1  be in possession of the two George Jackson items, but denies that they show he is a BGF
2  member. (Complaint, Attach. at 5-6.) He also alleges that the "inmate special agents" who
3  provided information against him in the gang validation process are prison gang members
4  who were part of a conspiracy with defendants to provide false information against Plaintiff.
5  (Complaint, Attach. at 3-5.)
6       Plaintiff claims that defendants violated his First Amendment right to free speech by
7  confining him to SHU as punishment for possessing legal publications, retaliated against
8  him for exercising his First Amendment right to possess legal publications by validating him
9  as a BGF member and confining him to the SHU, violated his due process rights by denying
10 him sufficient assistance during the gang validation process, violated his constitutional rights
11 by confining him to an indefinite SHU term, violated his due process rights by relying on
12 insufficient evidence to support the gang validation findings, and violated his due process
13 rights by using impermissibly vague gang validation procedures, such that Plaintiff had
14 insufficient notice that his actions could lead to gang validation. (Complaint, Attach. at 13-
15 19.) Plaintiff complains that defendants' actions violated his First, Eighth, and Fourteenth
16 Amendment rights, as well as CDCR regulations. (Complaint, Attach. at 3-4.)
17      Plaintiff seeks the following relief: an order compelling defendants to release him
18 immediately from the SHU and return him to the general prison population; an order
19 removing from his prison file all references to the BGF; an order compelling the FBI to
20 investigate "racially discriminatory practices" against African Americans by CDCR; to have
21 defendants indicted and criminally prosecuted for their alleged wrongdoing. Plaintiff also
22 seeks compensatory and punitive damages. (Complaint, Attach. at 1-2, 20-25.)
23 ///
24 ///
25 ///
26 ///
27
28

4

**DISCUSSION**

Having reviewed the Complaint pursuant to the standards set forth above, the Court has determined that Plaintiff's claims do not withstand screening for the following reasons:

**I.  The Eleventh Amendment Bars Plaintiff's Claims for Money Damages Against the Named Defendants in Their Official Capacities**

All of the named defendants are CDCR officers who are sued in their individual and official capacities. In Will v. Michigan Department of State Police, 491 U.S. 58, 64–66 (1989), the Supreme Court held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. The Supreme Court reasoned that a suit against a state official in his or her official capacity is a suit against the official's office, and as such is no different from a suit against the State itself, which would be barred by the Eleventh Amendment. See id.; see also Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir. 1995). In addition, "the Eleventh Amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages." Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed." See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984). While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court. See BV Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of California's Eleventh Amendment immunity). Furthermore, Congress has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

Accordingly, Plaintiff's claims for money damages against the named defendants in their official capacities are barred.

## II. Plaintiff's Allegations Are Insufficient to State a Due Process Claim Against Any of the Named Defendants Based on Their Involvement in Plaintiff's Gang Validation.

To state a claim against a particular defendant for violation of his civil rights under 42 U.S.C. § 1983, Plaintiff must allege facts demonstrating that each defendant, acting under color of state law, deprived Plaintiff of a right guaranteed under the Constitution or a federal statute. Karim-Panahi, 839 F.2d at 624. "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988), quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's due process claims arise out of the named defendants' involvement in Plaintiff's gang validation, which has resulted in his SHU confinement. The Supreme Court has held that the guarantee of due process under the Fifth and Fourteenth Amendments applies only when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672 (1977). The Supreme Court also has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)); see also Hewitt v. Helms, 459 U.S. 460, 466–67 (1983) (holding that the Due Process Clause itself does not create a liberty interest in being confined to a general population cell, as opposed to "the more austere and restrictive administrative segregation quarters"), overruled in part on other grounds, Sandin v. Connor, 515 U.S. 472, 482–84 (1995).

In Sandin, 515 U.S. at 483–84, the Supreme Court reaffirmed that a liberty interest in avoiding particular conditions of confinement may also arise from state prison regulations, but held that such state-created liberty interests "will be generally limited to freedom from

restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." It found that placement in administrative segregation for 30 days for a disciplinary infraction did not meet this standard. See id. at 487. However, in Wilkinson, 545 U.S. at 223–24, the Supreme Court held that indefinite placement in a restrictive "supermax" facility, where inmates were not eligible for parole consideration, did impose an "atypical and significant hardship with the correctional context," and did give rise to a liberty interest in its avoidance. The Supreme Court concluded that the due process to which a prisoner facing such confinement was entitled was (1) notice of the charges or reasons such placement is being considered, (2) an opportunity to be heard, and (3) notice of any adverse decision. See Wilkinson, 545 U.S. at 229 (relying on Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 16 (1979), and Hewitt, 459 U.S. at 473–76); see also Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (involving a California prisoner's due process challenge to his gang validation and SHU housing).

Here, even assuming that Plaintiff has a protected liberty interest with regard to indefinite SHU placement, Plaintiff's allegations and the exhibits attached to the Complaint establish that Plaintiff was afforded the foregoing due process protections.

In Bruce, 351 F.3d at 1287, the Ninth Circuit held that the prisoner's due process claim challenging his gang validation and SHU housing was subject to the "some evidence" standard of Superintendent v. Hill, 472 U.S. 445, 455 (1985). The Ninth Circuit noted, "[u]nder Hill, we do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Id.

Here, it is clear from the exhibits attached to the Complaint that there was some evidence in the record that could support the conclusion that Plaintiff is a BGF member. This included the confidential informant's statement identifying Plaintiff as an active BGF

member, as well as Plaintiff's possession of written materials indicating his BGF membership. (See Complaint, Exh. 1-7.)

Federal due process is satisfied by a single source of sufficiently reliable information. See Bruce, 351 F.3d at 1288; Jimenez v. Whitfield, 2012 WL 244149, at *11 (E.D. Cal. Jan. 25, 2012). Moreover, due process only requires that there be "some evidence" in the record that could support the conclusion reached by the prison decision-makers. See Hill, 472 U.S. at 455-56. The evidence does not have to logically preclude any other conclusion. See id. at 457.

Accordingly, Plaintiff's allegations are insufficient to state a due process claim against any of the named defendants based on their involvement in Plaintiff's gang validation proceedings because Plaintiff's allegations and the exhibits to the Complaint establish that Plaintiff was afforded all the process to which he was due.

**III. Plaintiff's Allegations Are Insufficient to State a First Amendment Claim Against Any of the Named Defendants.**

Plaintiff alleges that defendants have violated his First Amendment rights by taking actions that interfere with his constitutional rights of free association and speech. Plaintiff further alleges that the gang validation procedures do not provide adequate notice of how a prisoner may be validated as a gang member.

Prison regulations that impinge upon First Amendment rights are valid if they are reasonably related to a legitimate penological interest, such as prison security. See, e.g., Shaw v. Murphy, 532 U.S. 223, 229 (2001); Turner v. Safly, 482 U.S. 78, 89 (1987); Stefanow v. McFadden, 103 F.3d 1466, 1472 (9th Cir. 1996). California's process of identifying suspected gang members and associates and confining them in the SHU consistently has been found by the Ninth Circuit to serve legitimate penological interests. See, e.g., Bruce, 351 F.3d at 1289 ("It is clear . . . that prisons have a legitimate penological interest in stopping prison gang activity."); Munoz v. Rowland, 104 F.3d 1096 (9th Cir. 1997) ("California's policy of assigning suspected gang affiliates to the SHU is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect

the safety of all inmates."); see also, e.g., East v. California Dept. of Corrections, 474 Fed. Appx. 582, 583 (9th Cir. 2012) ("The district court properly dismissed [the plaintiff's] First Amendment claim because the prison's reliance on evidence that [the plaintiff] associated with gang members was reasonably related to legitimate penological interests."); Ruiz v. Cate, 436 Fed. Appx. 760, 761 (9th Cir. 2011) (same).

**IV.    Plaintiff Has Failed to State a Claim Based on Failure to Comply With Prison Regulations.**

To state a claim against a particular defendant for violation of his civil rights under 42 U.S.C. § 1983, plaintiff must allege that the defendant deprived him of a right guaranteed under the Constitution or a federal statute.  See West v. Atkins, 487 U.S. 42, 48 (1988); Karim–Panahi, 839 F.2d at 624.  "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988), quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis in original).

Here, Plaintiff repeatedly alleges that various defendants acted in violation of prison regulations.  (See, e.g., Complaint, Attach. at 4, 6, 9-12.)  Plaintiff's allegations that prison officials failed to comply with state law or prison regulations do not give rise to a federal civil rights claim.

\* \* \* \* \* \* \* \* \*

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.  Plaintiff must name separately each individual defendant against whom he brings his claims, identify clearly the factual basis for each of his claims and the particular constitutional violation, and articulate the connection between each named defendant and each claim.

1 If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3); be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document. The amended complaint must be legible, organized, comprehensible, and contain sufficient factual detail. The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court will recommend that this action be dismissed on the grounds set forth above for failure to prosecute and failure to comply with a Court order.**

DATED: May 14, 2013

/s/ John E. McDermott
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE