# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOHAN CROSS,<br><br>               Plaintiff,<br><br>    v.<br><br>M. REYNOSO, et al.,<br><br>               Defendants. | Case No. CV 13-1080-GHK (JEM)<br><br>MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

      On February 21, 2013, Yohan Cross ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 28 U.S.C. § 1983 ("Complaint"). On May 14, 2013, the Court dismissed the Complaint with leave to amend. On July 15, 2013, Plaintiff filed a First Amended Complaint ("FAC").

## SCREENING STANDARDS

      In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This screening is governed by the following standards:

      A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has

alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Before dismissing a pro se civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. Id. Only if it is absolutely clear that the deficiencies cannot be cured by

amendment should the complaint be dismissed without leave to amend. Id. at 623; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

After careful review and consideration of the FAC under the relevant standards and for the reasons discussed below, the Court finds that the FAC should be **DISMISSED WITH LEAVE TO AMEND.**

## PLAINTIFF'S ALLEGATIONS

Plaintiff names as defendants: M. Reynoso, institutional gang investigator at California Men's Colony ("CMC"); J.L. Cortez, institutional gang investigator at CMC; M.L. Brodie, an officer with the Office of Correctional Safety ("OCS") of the California Department of Corrections and Rehabilitation ("CDCR") in Sacramento; and J. Jefferson, an officer with the OCS of the CDCR. (FAC at 2-3.)

On September 8, 2010, Prison staff at the California Department of Corrections and Rehabilitation ("CDCR") California Men's Colony (CMC) searched Plaintiff's property and found a book by George Jackson, the founder of the Black Guerilla Family ("BGF") prison gang, and a pamphlet entitled "The Legacy of George Jackson" bearing a photograph of Jackson and authored by Talib Y. Rasheed. (FAC at 5.) On the same date, Defendant Reynoso reviewed these items and concluded they were indicative of Plaintiff's membership in and/or association with the BGF gang. (FAC at 9.) On September 23, 2010, Reynoso obtained a statement from a confidential informant identifying Plaintiff as an active fellow BGF member. (FAC at 9.) On October 14, 2010, Reynoso and Cortez submitted a gang validation package containing evidence regarding Plaintiff's affiliation with the BGF. (FAC at 10.) The gang validation package informed Plaintiff that he had been identified as a BGF member based on four separate source items, including Plaintiff's possession of the printed materials regarding George Jackson and the confidential informant's statement that Plaintiff was a BGF member. (FAC at 10.) On October 15, 2010, Reynoso interviewed Plaintiff regarding the documents used in the gang validation package. (FAC at 10.) Plaintiff provided a written statement concerning the documents in question. (FAC at 10.) Reynoso stated: "You like cop killing niggers, you get validated for it." (FAC at 10.) Reynoso and

3

Cortez concluded that there was sufficient evidence to validate Plaintiff as a member of BGF. (FAC at 10.) During the investigation of Plaintiff's gang membership, Cortez made the following "racial comment" directed at Plaintiff: "We are going to validate all you monkey[]s." (FAC at 11.) Cortez On December 2, 2010, defendants Brodie and Jefferson validated Plaintiff as a member of the BGF. (FAC at 16.) As a result, Plaintiff has been confined to the Secured Housing Unit ("SHU"). (FAC at 17.)

Plaintiff does not dispute that he was found to be in possession of the two George Jackson items, but denies that they show he is a BGF member. (FAC at 21.) Plaintiff claims that Defendants violated his First Amendment right to free speech by confining him to the SHU as punishment for possessing legal publications, violated his constitutional rights by confining him to an indefinite SHU term, discriminated against Plaintiff based on race in confining him to the SHU, and violated his due process rights by: relying on insufficient evidence to support the gang validation findings; relying on his "status" as a gang member to confine him to the SHU; and using impermissibly vague gang validation procedures, such that Plaintiff had insufficient notice that his actions could lead to gang validation. (FAC at 5, 7-8, 11-12, 17-20.) Plaintiff complains that defendants' actions violated his First, Eighth, and Fourteenth Amendment rights, as well as CDCR regulations. (FAC at 5, 7-8, 11-12, 17-20.)

Plaintiff seeks compensatory and punitive damages, and injunctive relief, including; an order compelling defendants to release him immediately from the SHU and return him to the general prison population; an order removing from his prison file all references to the BGF; an order requiring Defendants to promulgate fair regulations that accomplish the following: give inmates notice of the symbols, images, written materials etc. that indicate gang membership/association for the purposes of gang validation; abolish the practice of relying on African-American literature and symbols of the civil rights movement as a proxy for gang membership; and cease the practice of relying on inmates' gang membership status as a basis for an indeterminate SHU term, and rely instead on misconduct. (FAC at 6, 28.)

**DISCUSSION**

Having reviewed the FAC pursuant to the standards set forth above, the Court has determined that Plaintiff's claims still do not withstand screening for the following reasons:

**I.      Fed R. Civ. P. 10**

   **A.      Separate Statements**

Initially, Plaintiff's FAC does not fully comply with Fed. R. Civ. P. 10(b), which requires that "[a] party must state its <u>claims</u> or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . .  If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]"  Fed. R. Civ. P. 10(b) (emphasis added).  "'Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims.'"  <u>Bautista v. Los Angeles County</u>, 216 F.3d 837, 840 (9th Cir. 2000) (citation omitted).  "Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation."  <u>Id.</u> at 840-41.  "In such cases, separate counts permit pleadings to serve their intended purpose to frame the issue and provide the basis for informed pretrial proceedings."  <u>Id.</u> at 841.  "'Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'"  <u>Id.</u> (citations omitted).

Here, Plaintiff spread allegations related to each claim across various paragraphs, without clearly indicating what allegations are made in support of each claim.  (<u>See</u> FAC at 5-27.)  Plaintiff has failed to set forth <u>each</u> claim – <u>including the supporting facts for each claim</u> – as a distinct count separately labeled and numbered <u>by claim</u>, so as to allow the court and Defendants to understand the scope and nature of Plaintiff's allegations.  For example, Plaintiff did not combine his contentions relating to his fourteenth amendment equal protection claim into paragraph(s) separately labeled as "1.  Equal Protection."

**B.   Name Of Parties In Caption**

Plaintiff only names Defendant Reynoso in the caption of the FAC. (FAC at 1.) In the body of the Complaint, however, Plaintiff makes allegations against numerous defendants not named in the caption, namely Defendants J. L. Cortez, Michael L. Brodie, and John Jefferson. (See, e.g., FAC at 3-4, 11, 15.)

The individuals or entities named as "defendants" only in the body of the Complaint have not been presented properly as parties, and the Court does not recognize them as defendants in this action. If Plaintiff files an amended complaint, he must include in the caption the names of each defendant against whom he is asserting a claim. See Fed. R. Civ. P. 10(a); Local Rule 11-3.8(d); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing action for refusal to comply with court orders to name defendants in the caption). The Court will not order the United States Marshal to serve the amended complaint on any named defendant not identified in the caption.

**II.   Eleventh Amendment**

All of the named defendants are CDCR officers who are sued in their individual and official capacities. In Will v. Michigan Department of State Police, 491 U.S. 58, 64–66 (1989), the Supreme Court held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. The Supreme Court reasoned that a suit against a state official in his or her official capacity is a suit against the official's office, and as such is no different from a suit against the State itself, which would be barred by the Eleventh Amendment. See id.; see also Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir. 1995). To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed." See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984). While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute

consent to suit in federal court. See BV Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of California's Eleventh Amendment immunity). Furthermore, Congress has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983. However, the Eleventh Amendment "does not preclude a suit against state officers for prospective relief from an ongoing violation of federal law." Children's Hospital and Health Ctr. v. Belshe, 188 F.3d 1090, 1095 (9th Cir.1999), cert. denied, 530 U.S. 1204 2000); Ex Parte Young, 209 U.S. 123, 159-60 (1908).

Here, plaintiff makes a broad request for injunctive relief ordering "Defendant[]s[,] their superiors, employee[]s, agents, and successors in interest and all other persons in active concert or participation with them" to "cease the acts, omissions, polic[ie]s[,] practices or procedures" underlying Plaintiff's gang validation and placement in the SHU. (FAC at 5-6.) As an initial matter, Plaintiff's request for injunctive relief against Defendants' "superiors, employee[]s, agents, and successors in interest and all other persons in active concert or participation with them" must be dismissed because, among other serious defects, these individuals are not parties to this action. Moreover, Plaintiff is no longer incarcerated at CMC (FAC at 1), and his claim for injunctive relief against CMC officials regarding conditions at CMC is therefore moot. Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). Accordingly, Ex Parte Young is of no benefit to Plaintiff with respect to the CMC Defendants, and Plaintiff cannot maintain official capacity Section 1983 claims against Defendants Reynoso and Cortez.[1] Edmundson v. MacDonald, 415 Fed. Appx. 838, 838-39 (9th Cir. 2011) (district court properly dismissed prisoner's claims for injunctive relief as moot because the prisoner no longer was housed in

---

[1] Moreover, because Plaintiff's claims against Defendants Brodie and Jefferson are not sufficiently alleged, as discussed in detail below, injunctive relief is also unavailable as to these Defendants at this point. Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

the prison where the allegedly unconstitutional events took place); Dillev, 64 F.3d at 1368-69 (stating that an inmate's transfer from an institution while his claims are pending will generally moot any claims for injunctive relief relating to the prison's policies); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Butler v. Elle, 281 F.3d 1014, 1023 n. 8 (9th Cir. 2002).

In sum, Plaintiff's official capacity claims for both damages and injunctive relief are barred against Defendants Reynoso and J. L. Cortez, and his official capacity claims for damages are barred against Defendants Brodie and Jefferson.

**III.    Due Process**

To state a claim against a particular defendant for violation of his civil rights under 42 U.S.C. § 1983, Plaintiff must allege facts demonstrating that each defendant, acting under color of state law, deprived Plaintiff of a right guaranteed under the Constitution or a federal statute. Karim-Panahi, 839 F.2d at 624. "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)) (emphasis in original).

Here, Plaintiff's due process claims arise out of the named defendants' involvement in Plaintiff's gang validation, which has resulted in his SHU confinement. The Supreme Court has held that the guarantee of due process under the Fifth and Fourteenth Amendments applies only when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672 (1977). The Supreme Court also has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)); see also Hewitt v. Helms, 459 U.S. 460, 466–67 (1983) (holding that the Due Process Clause itself does not create a liberty interest in being confined to a general population cell, as opposed to "the more

austere and restrictive administrative segregation quarters"), overruled in part on other grounds, Sandin v. Connor, 515 U.S. 472, 482–84 (1995).

In Sandin, 515 U.S. at 483–84, the Supreme Court reaffirmed that a liberty interest in avoiding particular conditions of confinement may also arise from state prison regulations, but held that such state-created liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." It found that placement in administrative segregation for 30 days for a disciplinary infraction did not meet this standard. See id. at 487. However, in Wilkinson, 545 U.S. at 223–24, the Supreme Court held that indefinite placement in a restrictive "supermax" facility, where inmates were not eligible for parole consideration, did impose an "atypical and significant hardship with the correctional context," and did give rise to a liberty interest in its avoidance. The Supreme Court concluded that the due process to which a prisoner facing such confinement was entitled was (1) notice of the charges or reasons such placement is being considered, (2) an opportunity to be heard, and (3) notice of any adverse decision. See Wilkinson, 545 U.S. at 229 (relying on Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 16 (1979), and Hewitt, 459 U.S. at 473–76); see also Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (involving a California prisoner's due process challenge to his gang validation and SHU housing).

Here, even assuming that Plaintiff has a protected liberty interest with regard to indefinite SHU placement, Plaintiff's allegations in the FAC as well as the exhibits attached to the initial Complaint[2] establish that Plaintiff was afforded the foregoing due process protections.

---

[2] A document that is not attached to a complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

1        In Bruce, 351 F.3d at 1287, the Ninth Circuit held that the prisoner's due process
2  claim challenging his gang validation and SHU housing was subject to the "some evidence"
3  standard of Superintendent v. Hill, 472 U.S. 445, 455 (1985). The Ninth Circuit noted,
4  "[u]nder Hill, we do not examine the entire record, independently assess witness credibility,
5  or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in
6  the record that could support the conclusion.'" Id.

7       As the Court previously advised plaintiff in its Order dismissing the Complaint with
8  leave to amend, it is clear from Plaintiff's allegations in the FAC and the exhibits attached to
9  the Complaint that there was some evidence in the record that could support the conclusion
10  that Plaintiff is a BGF member. This included the confidential informant's statement
11  identifying Plaintiff as an active BGF member, as well as Plaintiff's possession of written
12  materials indicating his BGF membership. (See FAC at 9-16; Complaint, Exh. 1-7.)

13       Federal due process is satisfied by a single source of sufficiently reliable information.
14  See Bruce, 351 F.3d at 1288; Jimenez v. Whitfield, 2012 WL 244149, at *11 (E.D. Cal.
15  2012). Moreover, due process only requires that there be "some evidence" in the record
16  that could support the conclusion reached by the prison decision-makers. See Hill, 472 U.S.
17  at 455-56. The evidence does not have to logically preclude any other conclusion. See id.
18  at 457.

19       Moreover, to the extent Plaintiff claims that his due process rights were violated
20  because he did not receive notice that possession of the printed materials regarding George
21  Jackson could subject him to validation as a gang member (see, e.g., FAC at 6, 9), the
22  Fourteenth Amendment does not require that an inmate receive notice of each specific item
23  (or combination of items) potentially subject to use in the gang validation process. See,
24  e.g., Treglia v. Director of CDCR, 2010 WL 4905741, at *6 (E.D. Cal. 2010) ("Due process
25  did not require that plaintiff be given notice that the [MesoAmerican] symbol [tattooed on
26  Plaintiff's neck] signified association with the [Mexican Mafia]."); see also Ruiz v. Fischer,
27  2010 WL 4807052, at *7 (N.D. Cal. 2010) ("[A] document need not show that the inmate
28

engaged in or directed actual criminal activity for that document to be used to validate an inmate as a gang member or associate.").

Finally, to the extent Plaintiff purports to make a general due process challenge to California's gang validation policies and procedures, California's process of identifying suspected gang members and associates and confining them in SHU consistently has been found by the Ninth Circuit to serve legitimate penological interests. See, e.g., Bruce, 351 F.3d at 1289 ("It is clear . . . that prisons have a legitimate penological interest in stopping prison gang activity."); Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997) ("California's policy of assigning suspected gang affiliates to the SHU is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates."); see also Gamez v. Gonzales, 481 Fed. Appx. 310, 310 (9th Cir. 2012) (observing that "prison administrators have a rational basis for segregating validated gang associates from the general prison population"). Furthermore, in Castro v. Terhune, 712 F.3d 1304 (9th Cir. 2013), the Ninth Circuit recently rejected a "void-for-vagueness" challenge to the California regulations governing the gang validation procedures. Thus, Plaintiff's general due process challenges to California's gang validation procedures fail to state a § 1983 claim upon which relief may be granted.

Accordingly, Plaintiff's allegations are still insufficient to state a due process claim against any of the named defendants based on their involvement in Plaintiff's gang validation proceedings because Plaintiff's allegations in the FAC and the exhibits to the Complaint establish that Plaintiff was afforded all the process to which he was entitled, and any general due process challenge to California's gang validation policies and procedures must fail.

**IV.    First Amendment**

Plaintiff alleges that defendants have violated his First Amendment rights by taking actions that interfere with his constitutional rights of free association and speech. However as the Court previously advised plaintiff in its Order dismissing the Complaint with leave to amend, prison regulations that impinge upon First Amendment rights are valid if they are

1 reasonably related to a legitimate penological interest, such as prison security. See, e.g.,
2 Shaw v. Murphy, 532 U.S. 223, 229 (2001); Turner v. Safly, 482 U.S. 78, 89 (1987);
3 Stefanow v. McFadden, 103 F.3d 1466, 1472 (9th Cir. 1996). When considering a claim
4 based on a prison rule or regulation restricting a prisoner's First Amendment rights, the
5 Court applies the factors set forth in Turner v. Safley. 482 U.S. 78, 89 (1987). The prison
6 rule or regulation "must be found reasonable in light of four factors: (1) whether there is a
7 'valid, rational connection' between the regulation and a legitimate government interest put
8 forward to justify it; (2) 'whether there are alternative means of exercising the right that
9 remain open to prison inmates'; (3) whether accommodation of the asserted constitutional
10 right would have a significant impact on guards and other inmates; and (4) whether ready
11 alternatives are absent (bearing on the reasonableness of the regulation)." Pierce v. County
12 of Orange, 526 F.3d 1190, 1209 (9th Cir.), cert. denied, 555 U.S. 1031 (2008) (citing Turner,
13 482 U.S. at 89–90).

14 As noted above, California's process of identifying suspected gang members and
15 associates and confining them in the SHU consistently has been found by the Ninth Circuit
16 to serve legitimate penological interests. See, e.g., Bruce, 351 F.3d at 1289 ("It is clear . . .
17 that prisons have a legitimate penological interest in stopping prison gang activity."); Munoz,
18 104 F.3d at 1098 ("California's policy of assigning suspected gang affiliates to the SHU is
19 not a disciplinary measure, but an administrative strategy designed to preserve order in the
20 prison and protect the safety of all inmates."). Because Prison regulations that permit
21 officials to premise inmates' housing assignments and conditions based in part on their
22 gang affiliations are reasonably related to a legitimate penological interest, Plaintiff's
23 allegations fail to state a claim pursuant to the First Amendment. See, e.g., East v.
24 California Dept. of Corrections, 474 Fed. Appx. 582, 583 (9th Cir. 2012) ("The district court
25 properly dismissed [the plaintiff's] First Amendment claim because the prison's reliance on
26 evidence that [the plaintiff] associated with gang members was reasonably related to
27 legitimate penological interests."); Ruiz v. Cate, 436 Fed. Appx. 760, 761 (9th Cir. 2011)
28 (same).

1    Accordingly, Plaintiff's allegations are still insufficient to state a First Amendment
2 claim against any of the named defendants based on their involvement in Plaintiff's gang
3 validation proceedings.

4 **V.    Failure To Comply With Prison Regulations.**

5    To state a claim against a particular defendant for violation of his civil rights under 42
6 U.S.C. § 1983, plaintiff must allege that the defendant deprived him of a right guaranteed
7 under the Constitution or a federal statute.  See West v. Atkins, 487 U.S. 42, 48 (1988);
8 Karim–Panahi, 839 F.2d at 624.  As previously noted, "[a] person deprives another 'of a
9 constitutional right, within the meaning of § 1983, if he does an affirmative act, participates
10 in another's affirmative acts, or omits to perform an act which he is legally required to do
11 that *causes* the deprivation of which [the plaintiff complains].'" Leer, 844 F.2d at 633
12 (quoting Johnson, 588 F.2d at 743) (emphasis in original).

13    Here, Plaintiff alleges that defendants acted in violation of prison regulations.  (See,
14 e.g., FAC at 7, 16-17.)  As the Court previously advised plaintiff in its Order dismissing the
15 Complaint with leave to amend, Plaintiff's allegations that prison officials failed to comply
16 with state law or prison regulations do not give rise to a federal civil rights claim.

17 **VI.    Equal Protection**

18    Plaintiff alleges that Defendants violated Plaintiff's right to be protected from racial
19 discrimination under the Equal Protection Clause.  Specifically, Plaintiff alleges Defendant
20 Reynoso responded to Plaintiff's comments concerning the documents utilized to identify his
21 gang membership by stating: "You like cop killing niggers, you get validated for it." (FAC at
22 10.)  Plaintiff explains that he understood this comment as a reference to George Jackson,
23 who was alleged to have killed a police officer.  (FAC at 11.)  Plaintiff further alleges
24 Defendant J.L. Cortez made the following racially motivated comment to Plaintiff during the
25 investigation of his gang membership: "We are going to validate all you monkeys." (FAC at
26 11.)  Plaintiff states that Reynoso's and Cortez's racially motivated comments indicate that
27 their act of validating Plaintiff as a gang member was motivated by invidious discrimination.
28 (FAC at 11.)  Plaintiff further alleges that the CDCR's "unwritten rules of indiscriminately

using African-American political literature and images pertaining to . . . [the] black political activist / figure[,] George L. Jackson" sanctioned Reynoso's and Cortez' act of racially discriminating against Plaintiff in the course of validating him as a gang member. (FAC at 11.)

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). A plaintiff alleging an equal protection claim under 42 U.S.C. § 1983 based on race or other suspect classification "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." See Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). Because California's gang validation procedures in themselves are race neutral, i.e., they are not based on race but on gang membership, Plaintiff can only state an equal protection claim under a theory of disparate impact. See Lopez v. Cate, 2012 WL 4677221, at *8 (N.D. Cal. 2012). For a disparate impact claim, Plaintiff would have to allege: (1) that similarly situated non-African-American inmates were not validated; and (2) that the validation methods were motivated by a discriminatory purpose. See Lopez, 2012 WL 4677221, at *8 (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977) and McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999) (citations omitted)). Here, plaintiff still has not sufficiently alleged that similarly situated non-African-American inmates were not validated and his allegations are thus insufficient to state an equal protection claim.[3] See Lopez, 2012 WL 4677221, at *9 ("Because Plaintiff has failed to show that similarly situated non-Hispanic individuals were exempt from validation, he has not alleged a violation of the Equal Protection Clause.").

---

[3] Verbal harassment by Defendants fails to state a cause of action under § 1983, see Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) ("[V]erbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (internal citations and ellipsis omitted), and Plaintiff's allegations that Defendants Reynoso and Cortez made racist comments alone is insufficient to state a claim under the Equal Protection Clause.

Plaintiff's allegations are insufficient to state an equal protection claim based on plaintiff's gang validation.

**VII.     Eighth Amendment**

The Supreme Court has held that the unnecessary and wanton infliction of pain upon prisoners violates the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002). To challenge his conditions of confinement, a prisoner must satisfy a two-part test. Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). First, the plaintiff "must make an objective showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the plaintiff "must make a subjective showing that the prison official acted 'with a sufficiently culpable state of mind.'" Id. The Ninth Circuit has held that "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001). However, the basis of an Eighth Amendment violation is formed only when "those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave[.]" Id.; see also Hearns, 413 F.3d at 1042-43.

Plaintiff alleges that his assignment to SHU constituted cruel and unusual punishment. (FAC at 5.) However, the placement and retention of a plaintiff in segregated housing, even for an indeterminate period of time, does not in and of itself implicate the Eighth Amendment. Toussaint v. Yockey, 722 F.2d 1490, 1494 n .6 (9th Cir. 1984). Indeed, Plaintiff's contention that his indefinite placement in SHU imposes disproportionate punishment on him is legally insufficient to state an Eighth Amendment claim because the Ninth Circuit has held that "administrative segregation . . . is within the terms of confinement ordinarily contemplated by a sentence." See Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) (holding that conditions associated with administrative segregation, such as confinement in a single cell for most of the day, did not violate the Eighth Amendment); see also Perkins v. Crum, 476 Fed. Appx. 136, at *1 (9th Cir. 2012) (affirming dismissal of Eighth Amendment claim directed to conditions of confinement in SHU); Pina v.

Scavetta, 467 Fed. Appx. 605, at *1 (9th Cir. 2012) (same); Ruiz, 436 Fed. Appx. at 761 (affirming dismissal of prisoner's Eighth Amendment claim that his SHU sentence was disproportionate to his conduct). In sum, Plaintiff's FAC fails to allege that Plaintiff suffered a "sufficiently serious" deprivation, or that Defendants acted with a sufficiently culpable state of mind to state a claim for violation of the Eighth Amendment.

* * * * * * * * *

For the reasons set forth herein, the FAC is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a Second Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above. Plaintiff must name separately each individual defendant against whom he brings his claims, identify clearly the factual basis for each of his claims and the particular constitutional violation, and articulate the connection between each named defendant and each claim.

If Plaintiff chooses to file a Second Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "Second Amended Complaint"; (3); be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document. The amended complaint must be legible, organized, comprehensible, and contain sufficient factual detail. The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a Second Amended Complaint by the deadline set herein, the Court will recommend that this action be dismissed on the grounds set forth above for failure to prosecute and failure to comply with a Court order.**

DATED: October 24, 2013           */s/ John E. McDermott*
                                   JOHN E. MCDERMOTT
                                   UNITED STATES MAGISTRATE JUDGE